UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| DAVID S., | | **DECISION** |
| | Plaintiff, | **and** |
| v. | | **ORDER** |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | | 20-CV-1100F (**consent**) |
| | Defendant. | |

_____

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                     Attorneys for Plaintiff
                     KENNETH R. HILLER, and
                      ELIZABETH ANN HAUNGS, of Counsel
                     6000 North Bailey Avenue
                     Suite 1A
                     Amherst, New York  14226

                     TRINI E. ROSS
                     UNITED STATES ATTORNEY
                     Attorney for Defendant
                     Federal Centre
                     138 Delaware Avenue
                     Buffalo, New York  14202
                             and
                     VERNON NORWOOD
                     Special Assistant United States Attorney, of Counsel
                     Social Security Administration
                     Office of General Counsel
                     26 Federal Plaza
                     Room 3904
                     New York, New York  10278

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 1, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on July 1, 2021 (Dkt. 11), and by Defendant on November 30, 2021 (Dkt. 12).

**BACKGROUND**

Plaintiff David S. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on October 6, 2017 for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. ("the Act") ("disability benefits").  Plaintiff alleges he became disabled on March 14, 2017, based on diabetes and status post stroke.  AR[2] at 174, 190, 194.  Plaintiff's applications initially were denied on March 27, 2018, AR at 92-104, and at Plaintiff's timely request, AR at 118-19, on October 10, 2019, a hearing was held via video teleconference over which administrative law judge ("ALJ") Stephen Cordovani ("the ALJ"), located in Buffalo, New York, presided.  AR at 34-91 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, located in Olean, New York, represented by Kevin J. Bambury, Esq., and vocational expert Christine DiTrinco ("the VE").  At the beginning of the administrative hearing, Plaintiff amended his alleged disability onset date to July 30, 2017.  AR at 39.

---

[2] References to "AR" are to the page numbers of the Administrative Record Defendant electronically filed on February 16, 2021 (Dkt. 10).

On October 29, 2019, the ALJ denied Plaintiff's claim, AR at 7-28 ("ALJ's decision"), and Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council.  AR at 171-73.  On June 23, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR at 1-6, thereby rendering the ALJ's decision the Commissioner's final determination on the claim.  On August 17, 2020, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On July 1, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 11) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum").  On November 30, 2021, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order of Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum").  Filed on January 9, 2022 was Plaintiff's Reply to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.

## **FACTS**[3]

Plaintiff David S. ("Plaintiff"), born October 25, 1965, was 51 years old as of his initially alleged disability onset date of March 14, 2017, and 54 years old as of October 29, 2019, the date of the ALJ's decision.  AR at 23, 190, 195.  Plaintiff lives with his wife and teenage daughter in a house.  AR at 40, 202.  Plaintiff graduated high school and attended two years of college, earning an Associate's Degree in Machine Tools Technology, AR at 195, and worked from April 2001 to March 2017 as an porcelain enamel technician, AR at 196, which is Plaintiff's only past relevant work ("PRW").  Plaintiff left the job when he was laid off on March 14, 2017, AR at 47, which is also Plaintiff's initially alleged disability onset date.  After being laid off, Plaintiff looked for work and collected unemployment benefits, but on July 30, 2017, Plaintiff was treated at the emergency department of Jones Memorial Hospital for a syncopal event (diabetic emergency with loss of consciousness), after which Plaintiff stopped looking for work and his unemployment benefits were discontinued.  AR at 47, 306.  Plaintiff maintains he had a stroke on July 30, 2017, Plaintiff's Memorandum at 5 (citing AR at 280), but on April 13, 2018, despite being diagnosed with cognitive impairment and cerebral dysfunction for which cognitive therapy was prescribed, AR at 349-50, it was noted that Plaintiff's MRI showed no evidence of a stroke, and Plavix was discontinued in favor of daily baby aspirin.  AR at 350.

On forms completed in connection with his disability benefits application, Plaintiff described his daily activities as including taking care of his dog, preparing simple meals

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

once or twice a week, light cleaning, laundry, using a riding lawn mower to mow the lawn in ten-minute intervals, but needed help weeding and raking his large (11 acre) yard. AR at 203-05. Plaintiff goes outside daily, has a driver's license, and can drive. AR at 205. Plaintiff shops for an hour or two, once or twice a week for groceries and clothing, both at stores and by computer. *Id*. Plaintiff can handle money and pay bills. AR at 206. Plaintiff describes his hobbies and interests as riding his motorcycle, fishing with his grandson, and teaching his grandson about nature and God, although Plaintiff maintains since his disability onset date, he rides shorter distances. *Id*. Socially, Plaintiff plays cards, rides his motorcycle, fishes, and has dinner, goes to the grocery store and attends church. *Id*. Plaintiff needs no help with personal care. *Id*. at 203-04.

Plaintiff, who is an insulin dependent diabetic, obtains primary care at Omega Family Health where he was treated by Zia Sheikh, M.D. ("Dr. Sheikh"), and physician assistant Lauren Rae Bell ("PA Bell"). AR at 261-99, 324-31, 366-95, 399-402, 426-36. Dr. Sheikh referred Plaintiff for neurological evaluation at Foothills Medical Group, where Plaintiff was seen on March 16, 2018 and April 13, 2018, by family nurse practitioner Theresa Pequeen ("FNP Pequeen"). AR at 348-55. On December 21, 2018, Dr. Sheikh, based on the recent neurological evaluation, diagnosed Plaintiff with Alzheimer's disease. AR at 416-20. Plaintiff was followed for his diabetes at Olean Medical Group where he was treated by endocrinologist Neha Bansal, M.D. ("Dr. Bansal"). AR at 385-95. Dr. Bansal repeatedly diagnosed Plaintiff with "uncontrolled type 1[4] diabetes mellitus with neurologic complications, with long-term current use of

[4] The court notes although endocrinologist Dr. Bansal diagnosed Plaintiff with Type 1 diabetes (insulin dependent), Plaintiff's primary care physician, Dr. Sheikh, often refers to Plaintiff as having Type 2 diabetes (non-insulin dependent), *see*, *e.g.*, AR at 264 (February 3, 2017 examination), but at later

insulin" delivered by insulin pump.  AR at 387, 391.  On June 4, 2018, Plaintiff was evaluated for complaints of chest pain at Kaleida Health Cardiology Clinic by Christopher Mallavarapu, M.D. ("Dr. Mallavarapu"), who ordered left heart catheterization and, based on the results, on July 27, 2018, Dr. Mallavarapu diagnosed significant coronary artery disease.  AR at 357-59, 363-65.  In connection with his disability benefits applications, on September 27, 2017, Plaintiff underwent a consultative internal medicine examination by Russell Lee, M.D. ("Dr. Lee"), AR at 332-35, and on March 7, 2018, underwent a consultative psychiatric evaluation by psychologist Adam Brownfield, Ph.D. ("Dr. Brownfield").  AR at 339-42.  Plaintiff's medical records were reviewed on March 1, 2018, by State agency review physician D. Miller, D.O. ("Dr. Miller"), AR at 336-38, and on March 22, 2018, State agency review psychiatrist H. Tzetzo, M.D. ("Dr. Tzetzo").  AR at 343-47.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

---

examinations, also refers to Plaintiff as having Type 2 diabetes.  *See*, *e.g.*, AR at 400 (June 18, 2019 examination).

substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original)). Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

**2.     Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting his mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404, Subpt. P, Appendix 1 of the regulations ("the Listings"), and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments, retains the "residual functional capacity ("RFC") to perform his past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform his PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The claimant bears the burden of proof for the first four steps of the sequential analysis, with the Commissioner bearing the burden of proof on the final step.  20

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through December 31, 2022, AR at 12, Plaintiff has not engaged in SGA since July 31, 2017, his amended alleged disability onset date ("DOD"), *id*.,[6] and has the severe impairments of status-post transient cerebral ischemic attack with residual cognitive impairment, left side facial weakness and aphasia, diabetes with stage III chronic kidney disease and insulin pump implant, coronary artery disease with chronic obstructive pulmonary disease, *id*., but that Plaintiff's diagnosed sleep apnea, hypertension, and hyperlipidemia (high lipids including cholesterol and triglycerides), cause no more than a minimal impact on Plaintiff's ability to perform basic work activities and, as such, are non-severe impairments, *id*., that nothing in the record supports a medical diagnosis of Plaintiff's alleged neuropathy in his left arm and left hand which is therefore a non-medically determinable impairment, *id*. at 12-13, and that Plaintiff does not have an impairment or combination of impairments, including both severe and non-severe impairments, that meets or is medically equal to the severity of a listed impairment.  *Id*. at 12-14.  The ALJ further found that despite his impairments,

---

[6] At the administrative hearing, Plaintiff amended his alleged disability onset date from March 14, 2017 to July 30, 2017.  AR at 39.

Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff can only occasionally climb ramps and stairs, perform no balancing activities on uneven ground or terrain, occasionally kneel, crouch and crawl, cannot climb ladders, ropes, or scaffolds, cannot work around hazards such as unprotected heights or moving mechanical parts, must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, can understand, remember, and carry out simple instructions and tasks, perform no supervisory duties, independent decision-making or goal setting, and no strict production quotas, and is further limited to minimal changes in work routine and processes with no unfamiliar travel or use of public transportation, and is limited to frequent, as opposed to constant, interactions with supervisors, co-workers, and the public, but no team or tandem work, no telephone work, and no work with money or requiring math skills.  AR at 14-21.  The ALJ further determined that based on his RFC, Plaintiff is incabable of performing his PRW as a porcelain enamel laborer, AR at 21-22, but that based on Plaintiff's age, education, ability to communicate in English, and RFC, with transferability of skills irrelevant because Plaintiff's PRW was unskilled, jobs exist in the national economy that Plaintiff can perform including as a cleaner-housekeeper, cafeteria attendant, and mail clerk, *id*. at 22-23, such that Plaintiff has not been under a disability from July 30, 2017, though the date of the ALJ's decision.  *Id*. at 23.

In support of his motion, Plaintiff argues that in formulating Plaintiff's RFC, the ALJ failed to reconcile crucial evidence that undermined the RFC determination requiring remand, Plaintiff's Memorandum at 9-10, including Plaintiff's dementia and Dr. Sheikh's functional limitations, *id*. at 10-13, and Plaintiff's need to address his blood

sugar level during an average workday resulting in unscheduled breaks, *id*. at 15, and that the ALJ's "hyper focus" on Plaintiff's activities of daily living was improper. AR at 15-17. In opposition, Defendant argues the ALJ properly assessed Plaintiff's RFC. Defendant's Memorandum at 12-16. In reply, Plaintiff argues Defendant's argument does not address the ALJ's fundamental errors of failing to acknowledge Plaintiff's diagnosis of early onset dementia, Plaintiff's Reply at 1, that Plaintiff's primary care physician recommended Plaintiff use a cane for balance, *id*., Plaintiff's need to avoid exposure to environmental irritants, *id*., and Plaintiff's need for unscheduled breaks to address his diabetes, *id*., as well as that the ALJ's RFC determination relied on mischaracterization of the evidence. *Id*. at 1-2. Here, a careful review of the administrative record shows the ALJ failed to properly evaluate Plaintiff's diabetes requiring remand.

Preliminarily, the court observes that despite diagnosing Plaintiff with diabetes with stage III chronic kidney disease, observing that on July 30, 2017, acknowledging Plaintiff suffered a "syncopal episode from low blood sugar," AR at 16-17, and that Plaintiff had to leave the administrative hearing for a time to address a diabetic emergency when his blood glucose meter sounded an alarm alerting Plaintiff his blood glucose level was dangerously high, AR at 48-66, which the ALJ discussed upon Plaintiff's return to the hearing, AR at 66-68, the ALJ's Decision does not include any discussion that Plaintiff's diabetes was uncontrolled with hyperglycemia as contemplated under Listing 9.00, nor did the ALJ incorporate into Plaintiff's RFC formulation a need for Plaintiff to take unscheduled breaks to deal with his blood sugar levels. *See* AR at 14-21. Although the Listing of Impairments does not contain a

separate entry for diabetes, Listing 9.00, related to endocrine disorders, recognizes that "[c]hronic hyperglycemia, which is longstanding abnormally high levels of blood glucose, leads to long-term diabetic complications by disrupting nerve and blood vessel functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 9.00(B)(5)(a)(ii).  "To qualify under Listing 9.00(b)(5), diabetes mellitus must result in long term complications such as diabetic ketoacidosis, chronic hyperglycemia, or hypoglycemia. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 9.05(b)(5)." *Peter F. v. Comm'r of Soc. Sec.*, 2022 WL 1504174, at *7 (N.D.N.Y. May 12, 2022).  Further, the ALJ must consider the criteria for several Listings potentially applicable to diabetes-related complications. *See Melo v. Berryhill*, 2018 WL 847011, at *19 (S.D.N.Y. Feb. 13, 2018) (recognizing that potential complications associated with diabetes mellitus should be considered).  Specifically, as in the instant case, diabetes may be associated with chronic hyperglycemia,

> which is longstanding abnormally high levels of blood glucose, lead[ing] to long-term diabetic complications by disrupting nerve and blood vessel functioning. This disruption can have many different effects in other body systems. For example, we evaluate diabetic peripheral neurovascular disease that leads to gangrene and subsequent amputation of an extremity under 1.00; diabetic retinopathy under 2.00; coronary artery disease and peripheral vascular disease under 4.00; diabetic gastroparesis that results in abnormal gastrointestinal motility under 5.00; diabetic nephropathy under 6.00; poorly healing bacterial and fungal skin infections under 8.00; diabetic peripheral and sensory neuropathies under 11.00; and cognitive impairments, depression, and anxiety under 12.00.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

Although the ALJ did consider Listings 4.04 (ischemic heart disease), 11.04 (vascular insult to the brain), and 12.02 (neurocognitive disorders), AR at 13-14, such consideration was not undertaken in light of Plaintiff's uncontrolled diabetes with hyperglycemia.  Nor did the ALJ consider Plaintiff's more recent Alzheimer's diagnosis under Listing 12.00.

Significantly, among the evidence pertaining to Plaintiff's diabetes that the ALJ's Decision does not show the ALJ considered is, *inter alia*, that despite using both a syringe pen and an insulin pump for blood glucose control, the record shows Plaintiff suffers "frequent" hyperglycemic (high blood glucose) episodes, and "rare" hypoglycemic (low blood glucose) episodes, AR at 281-93, 381, 386, as well as neurologic complications with long-term current use of insulin. AR at 386-87, 389-91. On the morning of July 30, 2017, Plaintiff experienced a "syncopal event" (loss of consciousness) after his blood glucose dropped to 21 and Plaintiff was transported via ambulance to the emergency department of Jones Memorial Hospital where he was diagnosed with a diabetic emergency with altered mental status attributed to hypoglycemia. AR at 306. Plaintiff was treated with dextrose, his blood sugar improved, and Plaintiff was discharged with instructions to set his alarm in the morning to monitor his blood sugar and mental status and to follow-up with his primary provider. AR at 306-10. Since the July 30, 2017 syncopal event, Plaintiff has complained of some intermittent speech difficulties, intermittent confusion, and weakness on the left side of his face. AR at 349. On September 22, 2017, Dr. Sheikh assessed Plaintiff's syncopal event as a transient cerebral ischemic attack (temporary symptoms similar to a stroke caused by a blood clot that dissolves on its own). AR at 280. An MRI was negative for stoke, and further cognitive testing showed left cerebellar (area of the brain controlling coordination and balance) dysfunction and Plaintiff was diagnosed with cognitive impairment and cerebellar dysfunction. *Id*. at 349-50. Upon examination by Dr. Sheikh on February 12, 2018, May 21, 2018, July 31, 2018, and September 10, 2018, Plaintiff had slurred speech, but walked with a normal gait and was neurologically

intact, and Plaintiff was assessed with, *inter alia*, a cerebral infarction causing "severe disability," unspecified abnormalities of gait and mobility due to stroke for which use of a cane was advised, and diabetes with hyperglycemia.  AR at 368-84.  Upon examination on November 12, 2018, Dr. Sheikh reported Plaintiff was recently evaluated for memory problems by a neurologist who was concerned Plaintiff was developing early Alzheimer's disease for which diagnostic testing was ordered and Plaintiff was referred to a memory specialist, and started on Aricept (for improvement of memory in Alzheimer's disease patients), and on December 21, 2018, Plaintiff reported the Aricept was helping with his memory.  AR at 416-20.  At examinations on February 12, 2019, April 12, 2019, May 31, 2019, June 18, 2019, August 14, 2019 and August 16, 2019, Dr. Sheikh continued to diagnose Plaintiff with Alzheimer's disease, but also reported Plaintiff's blood sugar levels are often uncontrolled, often dropping over night and then rising during the day with fasting blood sugar levels between 300 and 400 as compared to the desired 110, and repeatedly diagnosed Plaintiff with uncontrolled Type 1 diabetes with hyperglycemia.  AR at 399-436. Accordingly, the ALJ failed to evaluate Plaintiff's diabetes as required by the Act.

Furthermore, the ALJ should have considered that Plaintiff's insulin dependent diabetes consistently was referred to by the Plaintiff's medical doctors as "uncontrolled" with Plaintiff's blood glucose readings too high, as well as Plaintiff's need for unscheduled breaks to address the issue, as was evident during the administrative hearing.  *See Rackard v. Saul*, 2020 WL 5250512, at * 3 & n. 1 (W.D.N.Y. Sept. 3, 2020) (remanding matter to Commissioner where ALJ, *inter alia*, failed to incorporate into his RFC determination the plaintiff's need for unscheduled breaks to deal with

14

"ongoing difficulties" and "need for regular blood glucose testing and management" of "uncontrolled high blood sugars").  The ALJ's decision that Plaintiff could perform a limited range of light work such that Plaintiff can perform jobs existing in the national economy thus is in error for failure to consider Plaintiff's diabetes is uncontrolled with chronic hyperglycemia, and thus is not supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is GRANTED; Defendant's Motion (Dkt. 12) is DENIED.  The matter is REMANDED to the Commissioner for further proceedings consistent with this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  May 19th, 2022
              Buffalo, New York